Case number 16-7070 et al. Demetra Baylor, excuse me, Appellant v. Mitchell Rubenstein & Associates, PC. Ms. Dennis for the appellant, Mr. Cantor for the appellee. Ms. Dennis, good morning. Good morning, your honors. May it please the court. My name is Roddy Dennis from Consumer Justice CSQ, and I am arguing on behalf of the appellant. I'd like to reserve two minutes of my time for rebuttal. Your honors, the Fair Debt Collection Practices Act, section 15 U.S.C. 1692 provides that upon proof of violation of the Federal Act, attorney fees are mandatory. Specifically, the act states that any debt collector who fails to comply with any provision of this subject chapter with respect to any person is liable to such person in an amount equal to the sum of the cost of the action together with reasonable attorney's fees as determined by this court. Each circuit court that has considered that question. So as determined by this court could be zero. Well, the court said it does say that that the fees are mandatory and that it is liable for attorney's fees. So but as determined by this court, I think means that a fee is reasonable. Well, your honor, every circuit that has viewed that question has interpreted it that I found has interpreted that to mean that the attorney fee in the Fair Debt Collection Practices Act is mandatory. Has any case had the issue before it that there should be no fees at all awarded? I am not. I am not sure if there if any case has had had the situation where there has been a statement of facts where the fees were under we've got we've got a cross appeal here, correct? Right. And he and and your opponent is arguing you're not entitled to any fees. Well, I clearly I disagree with that, your honor, based on this, this circuit's precedent, as well as the the law itself with in this, the circuit's precedent relating to attorney fee motions. Specific specifically, attorney fees under the 692 of the FTCP are meant to serve the dual purpose of giving ordinary consumers limited with limited means access to the judicial system and deterring deceptive and unfair debt collection practices amongst industry participants. Congress provide provided the fee shifting provision to encourage individual consumers to act as private attorneys general to assist in combating the rampant abuse by some industry players. Specifically, the CFPB and the FTC receives hundreds of complaints against debt collectors each year, your honors. The debt collection industry is highly regulated. It's a highly regulated industry and due to its ability to target the most vulnerable consumers who typically do not have the resources or the knowledge to fight back and the ability to and its ability to harm the marketplace by disadvantaging those debt collectors, those debt collectors that follow the law and expend significant resources to maintain compliance with such laws. As has been reported in numerous decisions, the attorney fee, the attorney fee provision is designed to be a deterrent to debt collectors. Moreover, debt collectors should not be encouraged to litigate in the expectation that the court will deny or reduce the plaintiff's fee request, especially when the defendant's own fees are not similarly scrutinized and reduced by the court. A fee award, this court has said in E.D. the Colonial Life Insurance Company, a fee award deters noncompliance with the law and encourage a settlement. Here, MRA emboldened by the trial court's ruling reducing plaintiff's attorney fee, a lodestar amount, and the court statement that it's not likely to award much more in attorney's fees in this action, MRA maintained, basically maintained its unreasonable settlement position and continued to litigate with abandon, comforted by the fact that the court had imposed an arbitrary ceiling on plaintiff's attorney's fees, regardless of how much MRA litigates. There was basically no downside for MRA, and for this reason, they continued to litigate regardless. One example is the motion to compel the plaintiff was forced to file, and the multiple court conferences, letters, emails, and motion practice that was required just to have the defendant arrive at the hearing on the motion without any non-frivolous legal justifications for its unreasonable objections, and even admitted that it lodged such a defense, such a resistant, based on a comment from the court, rather than the legal viability of such objections relating to the motion to compel. Ms. Dennis, may I ask you, you agreed to charge Ms. Baylor $325 an hour. How did it get bumped up to $450 an hour? Well, Your Honor, based on the court's precedent, the market rate, based on the Laffey Index, Your Honor, and plaintiff counsel charged a lower amount basically for, well, provided a lower amount for the, for Ms. Baylor based on the nature of the action that was being filed and based on her finances at that particular time, Your Honor, but this Court has ruled, and there's precedent, that the market rate, even with respect to legal service providers, including I know, I know the argument about the market rate, but you agreed, and you just gave the reasons why you agreed, to charge a lesser amount. Well, the purpose of the attorney fee motion, Your Honor, is that attorneys be justly compensated for at the market rate, so that they are encouraged to bring these sorts of actions. Otherwise, if they are not reimbursed at the market rate, then that obviously defeats Congress's intent with respect to the attorney fee shifting motion in the first place. And these are, these are the same arguments made in the civil rights actions as well, Your Honor. Let me ask you about the 40 hours that you've said it took to draft the complaint. That's a whole week, and that's in addition to the 30 hours you did your preliminary research. Your complaint is 15 pages long, right? I believe it's 15 or 17, Your Honor. All right. And if you discount 14 hours for the page, the four pages that were dedicated just to the D.C. claims, how could you spend 40 hours drafting 11 pages when you've done 30 hours worth of research already? Well, Your Honor, when filing my complaint, I tend to file complaints and do the research to try and make sure that the claims are viable prior to filing it, since there's not very, there wasn't at the time any D.C. law or precedent with respect to many of the claims that took a lot of, a lot of my time, especially with, with respect to the, with the FDCPA. So I had to research some more and I had to research other jurisdictions to determine whether or not the claims that are being alleged were, were viable. Specifically, the FDCPA, as, as this court has, with respect to the filing the appeal and defendant filing the appeal, basically this court has, has admonished that, that, that defendants cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response, and that this court said that in Copeland. Now, with respect to defendant, defendant is the only party here that has been, who has been sanctioned for filing a defendant's motion. As, as further said in, in City of Rivers, the Supreme Court said in City of Riverside, plaintiff, when, plaintiff basically was responding to defendants' motions. To, plaintiff responded to every single action that, that all, every single motion that defendant filed. Specifically, the, the plaintiff wanted to speak with the court regarding the four reasons why, three reasons why she believes that the court abused her discretion, its discretion in this, in this instance. And Coon v. United, Coon v. the United States, the Supreme Court said that the district court abuses its discretion when it makes an error of law. The abuse of, the abuse of discretion, discretion standard includes review to determine the discretion was not guided by erroneous legal conclusion. This court has also said in Salazar that misapplication of legal principles, arbitrary fact-finding, or unprincipled disregard, disregard for record evidence also constitutes abuse of discretion. Here, specifically, the court abuses, the district court abuses discretion in this instance because the trial court misapplied the law by relating to fee-shifting statutes and applied proportionality. It also misapplied the law by improperly adjusting the Lowe star, SUA spot, through imposition of sanctions for violation of February order and did so when no such objection was made by the defendant. The trial court also clearly made clearly erroneous findings of fact that are evident from the record. Specifically, as I said before, with respect to proportionality, city of, the Supreme Court has said in city of Riverside that reasonable attorney fees are not conditioned upon the need to be proportionate to an award of money damages. It also misapplied the, the adjust, the adjust the Lowe star, SUA spot through imposition of sanctions for violations of February order when no objection, as I said, was made by the defendant. And specifically this, the Supreme Court in Bloom v. Stinson says that the party proposing any adjustment to the Lowe star amount bears the burden of justification. This court in Betchik gave several relevant factors that are relevant to changes from the Lowe star amount. And that is the contingent nature of the success, harm resulting from delay in payment, benefit to the, to the public, possibly the quality of representation, the delay in the receipt, the receipt of services that plaintiff has not received, her payment from the order that was, that was ruled on by the district court. And depending on the, the quality adjustment depends on if there was, Miss Dennis, your time is up and we'll give you a couple of minutes to reply. Thank you. No one has any questions. All right. Mr. Cantor. May it please the court. Good morning, your honors. Ronald Cantor. I represent the Montgomery County law firm of Mitchell Rubenstein and associates. And this appeal, we asked the court to reverse the judgment for attorney fees and to adopt the principle that where a petition for fees in a fee shifting statute is so grossly and intolerably exaggerated as to shock the conscience of the court, the only proper award is an outright denial of fees. This doctrine was first articulated by the seventh circuit in 1980. I've quoted in my brief, but I think it bears repeating. If a court is required to award a reasonable fee where an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence would be reduction of their fee to what they should have asked for in the first place. To discourage such greed, a severe reaction is needful. This court. Is that the law of the circus? Pardon me? Is that the law of the circuit? I don't believe so. The case is not the law of the circuit. Well, I'm I'm asking. I'm suggesting that the court should adopt it in Jordan versus Department of Justice. This seventh circuit case, Brown v. Stackler was cited in a footnote, but the specific shock the conscious standard was not adopted. But what this court did say in Jordan is outright denial may be justified where a party seeking fees makes an implication grossly, intolerably exaggerated or manifestly filed in bad faith. Now, I suggest the time records here present a compelling argument, compelling evidence of the grossly exaggerated. But that's not what we're doing. We're reviewing the district court's determination. First of all, there's a question as to whether the district court should have reviewed the magistrate's decision. They know what under the law. There's a local provision. I'm not sure the local rule is correct. I think the federal rules of this, if it was a request on a dispositive motion, fees and this case law and other circuits, it says the fee request is dispositive and therefore reviewed by the district court should have been de novo. That's the first problem I have here. District court gave some deference to the magistrate. And it appears that the district court should have reviewed the magistrate de novo. But in any event. We're not we can't do what you're asking, review this de novo. The queries that you're raising are matters that the district court would consider in the first instance. And then we give differential deferential review to the district court's determination. I'd like to address that issue. And in fact, in my brief, I have pointed out that I believe it was the wrong standard. And I've asked the matter to be remanded alternatively. And I want to first speak to that. If you do, I urge the court to send the strongest signal and direction possible to the lower court. That is a proper exercise of discretion to deny us the entire we do that the district court knows how to do their job and then we review it. I understand stepping in and saying here now you you have to review this in the first instance. But incidentally, here's how we want you to do it. Well, that's not boring. The appeals have been here twice. I understand that this case ultimately is going to be decided by this court, whether it comes back or whether to deferential review of the district court's determination where there is a clear error of judgment. And I suggest there was a clear error of judgment here. It's an abuse of discretion and the court can reverse. Well, there's no abuse of discretion if the district court hasn't reviewed it properly yet. So there's nothing to look at if you're right on that. And I think that's a viable claim and there's nothing for us to do but send it back and tell the district court review it under the correct standard. I've contemplated that. And my my response is the initial report and recommendation. Was an abuse of discretion under the clear error of judgment from the magistrate. Yes. From the magistrate for the district court to decide. I thought your argument was that the district court made a legal error. I do. That is exactly. I believe that this is if I can focus on the time records because I think it evidences bad faith. And please, I want this message to be crystal clear. I take no satisfaction in advocating and arguing that faith on an adversary. I've been practicing for 37 years. I like to think of it as a noble profession. This doesn't make the profession look good, but I'd like to look. This family considers 37 years to be newcomers. I understand. I, I, I, I, I will. I acknowledge that your honor. It's hard to impress with 37 years of experience. I acknowledge that your honor. I'm a page page 80 of the joint page 80 of the joint appendix. This is the, this is the petition that asked for work done for preparing the fee petition. There's a big problem here. It's a page 80, four days of work, March 21 to March 24 research for reply to attorney fee opposition. The problem is the opposition wasn't filed to the 20, to the district court and remand that we review that. If it comes back subject to a deferential standard, if it's true that the district court had to review this day, no vote, you'll get your shot to make those arguments. But if there's a clear error of judgment, there can't be a clear error of judgment at the district court. Didn't do it correctly in the first place. There's no judgment. If the district court was supposed to review what they noble and did not, there is no judgment for us to review. But I think there is precedent that suggests that this court can reverse for an abuse of discretion where there's a clear error of judgment. You're missing my point. You, you recognize that the district court probably should have reviewed the magistrate. They know, right? Yes. I've already done alternatively. Then when the district court does that, then we give deferential review. The district court hasn't done it yet. You give the deferential review for abuse of discretion. What, what you're saying to the district court does what it's supposed to do. They haven't done what he hasn't done. What it's supposed to do yet. I hear you. I hear your honor and you agree. Well, I've made it as an alternative argument. Pardon me. I would like to make the argument I buy it. And now you're standing there saying, well, I don't really want you to buy. The reason I don't really want it is because I know we're going to be back here for the third time. And the reason that I don't want it is, is on behalf of my client who desperately wants this case to be over with. Did you say to the district court, please review this thing over because that's what you're required to do. I did argue that I can't, I can't quibble with that. I mean, I have to make, I have, yes, there's no question about it, but I did make an alternative argument that I, uh, posit to, to this, this court here this alternatively, not withstanding the procedural irregularity, I think the court can reverse or abuse of discretion where there's a clear error of judgment. And, and, and there are more, uh, entries in the records that are, that are, um, problematical. And, and yeah, I mean, you see, I can't speak for my colleagues. I'm not going through that with you because that's not my job. So you could sit there. If we gave you 40 minutes and point page after page and say, well, you know, this is a problem that that's not our job. That's not what we're supposed to be doing. The district court's got that burden and then we can talk to you. You made the right argument and now you don't want, but that's, you're stuck with it because it's correct. May I have just a few moments and no disrespect intended, but I understand you're not going to listen to me, but I always listen if it would be okay. Just if I could point out a couple of more issues regarding the overall fee petition, uh, and, and that is counsel's made alternative inconsistent arguments. She first says, I didn't include any time for the district of Columbia claims yet. She argues in her briefs that she could do that. I mean, that's inconsistent. She also says, and if you look at the time, why is that inconsistent? I didn't do it, but I could have. So what? Well, let me look at the time records to tell you. I put them in, in a joint, in a supplement to the appendix. This could be lost like a needle in the haystack with a large, uh, record like we have. So I want to make sure I know. What's the inconsistency? Well, it's inconsistent. I didn't claim it. And then you said, but now she says she could have. Well, so what? Well, what's inconsistent about it is when you look at the time records, there are a few records that refer to the FDCPA, but most of them say drafting fees, drafting complaint without distinguishing the excessive amount of time that spent. If it was only as to the FDCPA, it begs the question, where did she have time to work on the District of Columbia claims? And finally, I'm going to close with this. And your Honor, I hear you. And, um, I only have 35 seconds. So if I can at least take that much of what you may consider not, um, good spent time, page JA 422, November 12th, 13th letter represents I spent 22 hours as of November 12th, all of a sudden in the fee petition, it's 47 hours. We asked the court to reverse. If you're right on what you're saying, that would be great for the Novo review. I ask for a reversal based on a clear error of judgment or alternatively, a remand. Thank you very much, Your Honor. Does Ms. Dennis have any time left? All right. Why don't you take one minute? Uh, thank you, Your Honor. Um, first, uh, I would like to say that with respect to the state law claims, the state law claims were a part of a common, a common nucleus of operative fact with respect to the, they're related to the FDCPA claims. The, the work that was done specifically and exclusively on the state law claims was not, was not included in the fee petition. Uh, secondly, this court and, uh, FABI, uh, construction company, the Secretary of Labor, uh, ruled that 118 hours on a fee application was compensable. This rule also, uh, this court also ruled in Center for Biological Diversity and U.S. Department of Interior that 127 hours for a fee petition was compensable. Um, this court also ruled that 568 hours spent drafting an interim fee petition, uh, petition is compensable, thus reasonably expended in action on smoking and health, the CAB. Um, and plaintiff also cites numerous other, uh, other cases where this court has found more hours and more fees requested by the, by the, uh, party in that particular case, uh, and as I said, they're cited to in my brief where the court has said that those fees were compensable and were not excessive or outright, uh, we have your argument. Thank you. Thank you.
judges: Henderson, Edwards, Sentelle